IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HENRY KIRKWOOD and      §
JESSIE COLE      §
     §
     Plaintiffs,      §
     §
vs.      §      CIVIL ACTION NO. 3-04-CV-226-D
     §
INCA METAL PRODUCTS      §
CORPORATION, DALLAS TUBE &      §
ROLLFORM, JIM HUTCHINS and      §
ROGER SHEPHERD,      §
     §
     Defendants.      §

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

RICHARD M. KOBDISH
STATE BAR NO. 11640000
WILLIAM P. FINEGAN
STATE BAR NO. 00708700
HELEN THIGPEN
STATE BAR NO. 00797756

FULBRIGHT & JAWORSKI L.L.P.
2200 ROSS AVENUE, SUITE 2800
DALLAS, TEXAS 75201-2784
TELEPHONE: (214) 855-8000
FACSIMILE: (214) 855-8200

ATTORNEYS FOR DEFENDANT INCA METAL
PRODUCTS CORPORATION

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF UNDISPUTED FACTS ......................................................................... 2

    A.   Resignation From Employment. ......................................................................... 2

    B.   Plaintiffs' Varying Claims. .................................................................................. 2

    C.   Post-DTR Employment .......................................................................................... 4

II. ARGUMENTS AND AUTHORITIES ............................................................................. 4

    A.   Title VII, TCHRA, and ADEA Claims Cannot Be Brought Against Shepherd. ................ 5

    B.   Plaintiffs Have Not Satisfied Statutory Prerequisites On Their Retaliation Claim Or Kirkwood's Age Discrimination Claim. ........................................................................ 6

    C.   Plaintiffs Were Not Discriminatorily Denied Work. ..................................................... 9

    D.   Intentional Infliction of Emotional Distress Is Not A Cognizable Claim ........................ 10

    E.   Plaintiffs Failed to Mitigate Their Damages ................................................................. 11

        1.   Cole's Failure To Mitigate ......................................................................... 11

        2.   Kirkwood's Failure To Mitigate And Inability To Work. ................................. 12

III. CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

*Alexander v. Frank,*
    777 F. Supp. 516 (N.D. Tex. 1991) ...............................................................................13

*Babrocky v. Jewel Food Co.,*
    773 F.2d 857 (7th Cir. 2985) ...........................................................................................7

*Benevides v. Moore,*
    848 S.W.2d 190 (Tex.App. —Corpus Christi 1992, writ denied) .....................................5

*Breech v. Depuy Spine, Inc.,*
    No. H-05-0025, 2006 U.S.Dist. LEXIS 58344 (S.D. Tex. Aug. 18, 2006) ...................6, 8

*Burton v. Madix Store Fixtures,*
    No. 3:05-CV-1081-L, 2006 U.S.Dist. LEXIS 3835 (N.D. Tex. Feb. 1, 2006)...................8

*Carlton v. C. Fearneyhough,*
    No. 4:05-CV-711-Y, 2007 U.S.Dist. LEXIS 20875 (N.D. Tex. Mar. 22, 2007)..............10

*Carpenter v. Tyler Independent School District,*
    429 F.Supp.2d 848 (E.D. Tex. 2006)...............................................................................11

*City of Austin v. Gifford,*
    824 S.W.2d 735 (Tex.App.—Austin 1992, no writ).........................................................5

*Clayton v. Rumsfeld,*
    No. 03-51167, 2004 U.S.App. LEXIS 16011 (5th Cir. Aug. 4, 2004) ..........................6, 7

*Collier v. Wells Fargo Home Mortg.,*
    No. 7:04-CV-086-K, 2006 U.S.Dist. LEXIS 35619 (N.D. Tex. May 26, 2006)..............11

*Creditwatch, Inc. v. Jackson,*
    157 S.W.3d 814 (Tex. 2004).............................................................................................10

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,*
    156 F.3d 581 (5th Cir. 1998) ...........................................................................................9

*Foley v. University of Houston System,*
    355 F.3d 333 (5th Cir. 2003) ...........................................................................................5

*Grant v. Lone Star Co.,*
    21 F.3d 649 (5th Cir. 1994) .............................................................................................5

*Gupta v. East Tex. State University,*
    654 F.2d 411 (5th Cir. 1981) ...........................................................................................8

*Hansard v. Pepsi-Cola Metropolitan Bottling Co., Inc.,*
    865 F.2d 1461 (5th Cir.), *cert. denied,*
    493 U.S. 842 (1989)................................................................................12

*Hayden v. La-Z-Boy Chair Co.,*
    9 F.3d 617 (7th Cir. 1993) ......................................................................5

*Hicks v. Cheney,*
    No. 92-2123, 1994 U.S.Dist. LEXIS 20348 (W.D. Pa. June 29, 1994)............13

*Hoffman-La Roche, Inc. v. Zeltwanger,*
    144 S.W.3d 438 (Tex. 2004).................................................................10

*Jackson v. Federal Express Corp.,*
    2006 U.S.Dist. LEXIS 10324 (N.D. Tex. Mar. 14, 2006) ..................................5

*Laredo v. Rodriguez,*
    791 S.W.2d 567 (Tex. App.—San Antonio 1990, writ denied)........................12

*Manning v. Chevron Chem. Co.,*
    332 F.3d 874 (5th Cir. 2003) ...................................................................7

*McCray v. DPC Industries, Inc.,*
    942 F.Supp. 288 (E.D. Tex. 1996).............................................................8

*McKinney v. Dallas Ind. School District,*
    No. 3:03-CV-1297-P, 2004 U.S.Dist. LEXIS 18748 (N.D. Tex. Sep. 14, 2004)...............6

*Meadows v. Texas Federal Credit Union,*
    No. 5:05CV158, 2007 U.S.Dist. LEXIS 4456 (E.D. Tex. Jan. 22, 2007) ........................11

*National Association of Government Employees v. City Public Service Board of San*
    *Antonio,* 40 F.3d 698 (5th Cir. 2994)..............................................................6

*Norton v. Houston Industrial, Inc.,*
    No. 03-20648, 2004 U.S.App. LEXIS 14695 (5th Cir. Jul. 16, 2004) ...............10

*Ostapowicz v. Johnson,*
    541 F.2d 394 (3d Cir. 1976), *cert. denied,*
    429 U.S. 1041 (1977)...........................................................................13

*Phillips v. Union Carbonide,*
    No. 01-0495, 2003 U.S.Dist. LEXIS 6040 (E.D. La. Apr. 8, 2003).................13

*Palai v. Nationwide Mut. Ins. Co.,*
    69 F. Supp.2d 903 (S.D. Tex. 1999) ..........................................................11

*Phongsavane v. Potter*,
    No. SA-05-CA-0219-XR,
    2006 U.S.Dist. LEXIS 70103 (W.D. Tex. Sep. 18, 2006)............................................9, 10

*Estate of Reynolds v. Dole*,
    No. C-84-7012-VW (JSB),
    1990 U.S.Dist. LEXIS 10259 (N.D. Cal. Aug. 1, 1990), *aff'd*,
    985 F.2d 470 (9th Cir,. 1993) ..............................................................................13

*Rossum v. Chertoff*,
    No. H-04-0464, 2005 U.S.Dist. LEXIS 39862 (S.D. Tex. Dec. 21, 2005)........................8

*Rudisell v. S.H.R.M. Catering Service*,
    No. 92-3212, 1994 U.S.Dist. LEXIS 1637 (E.D. La. Feb. 10, 1994) ...............................13

*Saucedo v. Bank of Tex., N.A.*,
    No. 3:04-CV-2201-P, 2005 WL 578474 (N.D. Tex. Mar. 9, 2005) .................................11

*Sellers v. Delgado Coll.*,
    902 F.2d 1189 (5th Cir. 1990) .....................................................................11, 12, 13

*Sellers v. Garnsey & Wheeler Co.*,
    No. 79-C-1193, 1980 U.S.Dist. LEXIS 16768 (D. Colo. Nov. 26, 1980).........................13

*Shackelford v. Deloitte & Touche, L.L.P.*,
    190 F.3d 398 ...................................................................................................6

*Standard Fruit & Vegetable Co. v. Johnson*,
    985 S.W.2d 62 (Tex. 1998)...............................................................................10

*Taylor v. Books-a-Million, Inc.*,
    296 F.3d 376 (5th Cir. 2002) ..............................................................................6

*Thomas v. Texas Department of Criminal Justice*,
    220 F.3d 389 (5th Cir. 2000) ..............................................................................6

*Tillospm v. Trinity Valley Electrical Cooperative, Inc.*,
    No. 3:03-CV-2480-D, 2005 WL 292423 (N.D. Tex. Feb. 2, 2005) .................................11

*Wallace v. Methodist Hospital System*,
    271 F.3d 212 ...................................................................................................6

*West v. Nabors Drilling USA, Inc.*,
    330 F.3d 379 (5th Cir. 2003) ..............................................................................11

*Williams v. Banning*,
    72 F.3d 552 (7th Cir. 1995) ................................................................................5

*Wooten v. Federal Express Corp.*,
      No. 3:04-CV-1196-D, 2007 U.S.Dist. LEXIS 2195 (N.D. Tex. Jan. 9, 2007) .................10

## FEDERAL STATUTES

42 U.S.C. § 1981 ..........................................................................................................3, 9

29 U.S.C. § 630 ..............................................................................................................5

**Page**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY KIRKWOOD and<br>JESSIE COLE | §<br>§<br>§ | |
| Plaintiffs, | §<br>§<br>§ | |
| vs. | §<br>§<br>§ | CIVIL ACTION NO. 3-04-CV-226-D |
| INCA METAL PRODUCTS<br>CORPORATION, DALLAS TUBE &<br>ROLLFORM, JIM HUTCHINS and<br>ROGER SHEPHERD, | §<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

On February 3, 2003, Plaintiffs, Henry Kirkwood ("Kirkwood") and Jessie Cole ("Cole")

(collectively "Plaintiffs"), submitted their letters of resignation to Dallas Tube & Rollform

("DTR").[1]  Since then, their stories have changed several times about what led to the end of their

employment.  They now assert, in this lawsuit, a number of claims related to their employment

with DTR.  Many of those claims, however, are barred and should be dismissed.  Additionally,

neither Plaintiff adequately mitigated damages after the end of their employment with DTR, and

thus this Court should also grant summary judgment barring or limiting their damages.

---

[1]  The proper name of the corporate entity that employed Plaintiffs was KIC Holdings, Inc. d/b/a Kingway Inca
Clymer Material Handling (hereinafter "Inca").  Plaintiffs worked for Inca's Dallas Tube & Rollform division.
Since the filing of this lawsuit, the assets of the Dallas Tube & Rollform division have been sold.  Additionally, KIC
Holdings, Inc. has been acquired by Unarco Materials Handling, Inc.  For purposes of Defendants' Partial Motion
for Summary Judgment, Defendants will assume that the corporate Defendant was properly named.

# I.
## STATEMENT OF UNDISPUTED FACTS[2]

**A.**   **Resignation From Employment.**

Plaintiffs were employed by DTR, which produced square tubing.  (App. 2, 12, Kirkwood Depo. 4, 17; App. 60, 64, Cole Depo. 4, 15).  Defendant Roger Shepherd ("Shepherd") was the plant supervisor.  (App. 31, Kirkwood Answer to Req. for Admission No. 5; App. 88, Cole Answer to Req. for Admission No. 5).  On February 3, 2003, Plaintiffs and a third employee, Kinsey Woods, went together to meet with Jim Hutchins, the plant manager.  (App. 13-14, Kirkwood Depo. 37-38; App. 72, Cole Depo. 46).  After Hutchins would not resolve their complaints to their satisfaction, Kirkwood, Cole, and Woods submitted letters of resignation from their employment with Defendant.  (App. 13-14, 15-16, Kirkwood Depo. 37-38, 40-41; App. 67-68, Cole Depo. 28-29; App. 55, 114, Resignation Letters).

**B.**   **Plaintiffs' Varying Claims.**

Plaintiff have given differing versions of the events leading to the submission of their resignation letters at DTR.  When Plaintiffs were seeking unemployment compensation benefits, Cole claimed that he resigned due to unsafe working conditions.  (App. 65-68, 69-71, Cole Depo. 26-29, 31-33; App. 111-113, Notice of Appeal; App. 116, Appeal Tribunal Decision).  Specifically, Cole claimed that smoke from the machines was "choking everyone."  (App. 67-68, Cole Depo. 28-29; App. 112, Notice of Appeal).  Other safety concerns included a loose door on a saw blade and stacks of tubes with sharp edges.  (App. 70-71, Cole Depo. 32-33; App. 116, Appeal Tribunal Decision).  Kirkwood, on the other hand, complained about Shepherd's yelling and swearing and about the denial of overtime.  (App. 124-129, Appeal Tribunal Decision).

---

[2]  The Statement of Undisputed Facts is based largely on Plaintiffs' deposition testimony.  For purposes of Defendants' Partial Motion for Summary Judgment only, Defendants will assume Plaintiffs' factual assertions to be true.

Later, Plaintiffs filed charges of discrimination alleging that they had been forced to quit due to race discrimination. (App. 21-22, Kirkwood Depo. 62-63; App. 58, 123, EEOC Charges). In their Charges, Plaintiffs also alleged that they were given less overtime hours than non-black employees and that they were subjected to a racially hostile work environment consisting of the plant supervisor cursing, yelling, and constantly monitoring them. (App. 58, 123, EEOC Charges).

After receiving their right to sue notices, Plaintiffs filed this instant lawsuit, which includes claims for race discrimination and hostile environment under Title VII, the Texas Commission on Human Rights Act ("TCHRA"), and 42 U.S.C. § 1981. (First Am. Compl. [doc. no. 21] ¶¶ 17-28, 37-41, 45). However, Plaintiffs included additional factual allegations which had not been previously raised. Besides the denial of overtime, which had been alleged in their Charges of Discrimination, the Complaint also alleged discriminatory reduction of workload.[3] (First Am. Compl. [doc. no. 21] ¶ 13). Also, besides the cursing, yelling, and constant monitoring, Plaintiffs added allegations that Shepherd had used the phrase "nigger rigging." (First Am. Compl. [doc. no. 21] ¶ 15). Neither Plaintiff had alleged any type of racial remark in their appeals for unemployment benefits, their EEOC Charges, or their Charge Questionnaires. (App. 58, 123, EEOC Charges; App. 56-57, 120-122, Charge Questionnaires). Additionally, in this lawsuit, both Plaintiffs have added claims of retaliation under Title VII and the TCHRA and intentional infliction of emotional distress, and Kirkwood has added age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and the TCHRA. (First Am. Compl. [doc. no. 21] ¶¶ 29-36, 43, 44, 47-54).

---

[3] At his deposition, Kirkwood testified that he is *not* complaining about denial of overtime. (App. 18, 19, Kirkwood Depo. 46, 48).

**C.    Post-DTR Employment.**

Both Plaintiffs are currently working at the plant that was formerly DTR.  (App. 3-4, Kirkwood Depo. 7-8; App. 62, Cole Depo. 10).  That plant is now Longhorn Steel.  (App. 3-4, Kirkwood Depo. 7-8; App. 61-62, Cole Depo. 9-10).  Cole has been there since January 2007.  Prior to that, Cole had worked in New Orleans from May 2005 until the end of 2006.  (App. 63, Cole Depo. 14).  That was the only other job Cole held since leaving DTR.  (App. 64, Cole Depo. 15).  Cole admits that he did not look for a job until the job in New Orleans came up.  (App. 64, Cole Depo. 15).

Kirkwood has held no other job since leaving DTR and prior to beginning work for Longhorn Steel in April 2007.  (App. 4, 8, Kirkwood Depo. 8, 12).  During the first five or six weeks that he received unemployment benefits, he was required to go to the unemployment office to look for a job, but he did not find one.  (App. 10, Kirkwood Depo. 14).  Although he claims that he also drove around looking for a job, he could only identify one company at which he applied.  (App. 11, Kirkwood Depo. 15).  In any event, Kirkwood had always planned to retire at age 62 – two years after his employment with DTR ended.  (App. 7, Kirkwood Depo. 11).  Even had Kirkwood not planned on retiring, Kirkwood began receiving disability benefits in September or October 2005, after which he was unable and/or did not plan to work.  (App. 5, 7-8, Kirkwood Depo. 9, 11-12).  Although he is currently working at Longhorn Steel, he is only able to work 10 hours per week.  (App. 6, Kirkwood Depo. 10).

## II.
## ARGUMENTS AND AUTHORITIES

For reasons set forth below, most of Plaintiffs' claims are barred as a matter of law.

A.      **Title VII, TCHRA, and ADEA Claims Cannot Be Brought Against Shepherd.**[4]

Liability for Plaintiffs' Title VII and TCHRA claims and Kirkwood's ADEA claim cannot be imposed against Shepherd because he was not Plaintiffs' employer (App. 31, Kirkwood Answer to Request for Admission No. 4; App. 88, Cole Answer to Request for Admission No. 4). In *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994), the Fifth Circuit held that "Title VII does not permit the imposition of liability upon *individuals* unless they meet Title VII's definition of employer." *Id.* at 653 (emphasis added); *see Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) (district court properly granted summary judgment for individual physicians who did not meet the definition of employer under the Title VII); *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995) (supervisors are not individually liable); *Jackson v. Fed. Express Corp.*, 2006 U.S. Dist. LEXIS 10324, at *50 (N.D. Tex. Mar. 14, 2006) (Title VII claim against individual dismissed). Likewise, it is well established that individual supervisors and managers cannot be held liable under the TCHRA because they are not "employers" within the meaning of the statute. *E.g., City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ); *Benevides v. Moore*, 848 S.W.2d 190, 198 (Tex. App.—Corpus Christi 1992, writ denied).

The same authority applies to ADEA claims brought against individuals. The ADEA has a similar definition of "employer," limiting liability to employers with twenty or more employees. 29 U.S.C. § 630(2). "Because Title VII and the ADEA share 'a similar purpose … cases construing the definitional provisions of one [statute] are persuasive authority' when interpreting the provisions of the other." *Hayden v. La-Z-Boy Chair Co.*, 9 F.3d 617, 619 (7th Cir. 1993) (internal quotation marks and citations omitted).

---

[4] Plaintiffs also have no cognizable claim against Defendant Shepherd for intentional infliction of emotional distress, as detailed, *infra*, in Section II.D.

**B.** **Plaintiffs Have Not Satisfied Statutory Prerequisites On Their Retaliation Claim Or Kirkwood's Age Discrimination Claim.**

Kirkwood's age discrimination and both Plaintiffs' retaliation claims are improper because no EEOC charge was filed on those claims.[5]  It is well established that plaintiffs must first exhaust administrative remedies by filing a charge with the EEOC or corresponding state agency prior to filing suit under Title VII or the TCHRA. *E.g., McKinney v. Dallas Ind. Sch. Dist.*, No. 3:03-CV-1297-P, 2004 U.S. Dist. LEXIS 18748, at *5 (N.D. Tex. Sep. 15, 2004) (citing *Taylor v. Books-a-Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)).  A civil lawsuit filed under Title VII is "limited in scope and may encompass only the discrimination stated in the EEOC charge itself or developed in the course of a reasonable EEOC investigation of that charge." *Breech v. Depuy Spine, Inc.*, No. H-05-0025, 2006 U.S. Dist. LEXIS 58344, at *13 (S.D. Tex. Aug. 18, 2006) (citing *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711-12 (5th Cir. 1994)); *see Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (when EEOC housing discrimination charge alleged only discrimination based on sex, district court abused its discretion in allowing an amendment to the pretrial order to include race discrimination in the housing charge).  "Failure to assert a claim in the charge or its lack of development in the course of a reasonable investigation of the charge precludes a plaintiff from later lodging the claim in a civil suit." *Breech*, 2006 U.S. Dist. LEXIS 58344, at *13 (citing *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 712).

The administrative exhaustion requirement has two primary purposes.  The first is "to allow the agency, in its investigatory and conciliatory role, fully to investigate and attempt to

---

[5]  The Fifth Circuit has recognized that the law governing claims under Title VII and the TCHRA is identical. Therefore, courts analyze the merits of these claims under either federal or state law, regardless under which statute they arise. *E.g., Wallace v. Methodist Hosp. Sys.* 271 F.3d 212, 219 n.10 (5th Cir. 2001); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 n.2 (5th Cir. 1999).  Accordingly, Plaintiffs' claims of discrimination, hostile work environment, and retaliation under Title VII and the TCHRA, as well as Kirkwood's age discrimination claim under the ADEA and the TCHRA, are addressed together.

resolve claims of discrimination." *Clayton v. Rumsfeld*, No. 03-51167, 2004 U.S. App. LEXIS 16011, at *8 (5th Cir. Aug. 4, 2004).   The second purpose of the agency charge is to put the employer on notice of the existence and nature of the charges against it.   *Id.* at *9 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2003)).   Therefore, "allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Id.* at *9-10 (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)).

Plaintiffs did *not* allege in their Charges of Discrimination that they were retaliated against or that Kirkwood was discriminated against because of his age.   (App. 58, 123).   Both Plaintiffs only checked the box marked "Race" on their respective Charges of Discrimination. (App. 58, 123).   Similarly, the narrative/factual portion of each Plaintiff's Charge encompasses claims of race discrimination only.   The narratives read in their entirety[6]:

**I. Personal Harm:**

From on or around June 26, 2002 and continuing until I was forced to quit my position I was subjected to a racially hostile work environment.   I was harassed by being yelled at, cursed at by the Plant Supervisor.   I was monitored on a constant basis by being watched.   I was given less overtime hours than non-Black employees.

**II. Respondent's Reason for Adverse Action:**

No reason was given.

---

[6] Cole's Charge actually states the date as June 26, 2003 instead of 2002, which is most certainly a typo since both Plaintiffs allege that their employment with Defendant ended on February 3, 2003.   In all other respects, the narrative portion of the charges are the same.

### III. Discrimination Statement:

I believe I have been discriminated against because of my race, Black in violation
of Title VII of the Civil Rights Act of 1964, as amended.

(App. 58, 123).  Furthermore, the EEOC's decision made clear that race discrimination was the

only issue alleged and investigated.  The EEOC's letters to both Plaintiffs[7] state in relevant part:

… You said that you were discriminated against because of your race Black in
that you were subjected to a racially hostile work environment, harassed by being
yelled at, cursed at, monitored constantly and given less overtime.

…

… the information in your file shows it is unlikely any more investigation will
result in finding discrimination because there is insufficient evidence to support
your allegations of a racially hostile work environment.  Also, the evidence does
not support that you were given less overtime than non-Black employees.

(App. 58, 123).

Because Kirkwood's age discrimination claim and Plaintiffs' retaliation claims were not

encompassed by Plaintiffs' Charges or the EEOC's investigation, Defendants are entitled to

summary judgment on those claims.[8]  *See Burton v. Madix Store Fixtures,* No. 3:05-CV-1081-L,

2006 U.S. Dist. LEXIS 3835, at *3-5 (N.D. Tex. Feb. 1, 2006) (plaintiff's race discrimination

claim dismissed where EEOC charge alleged only age discrimination); *Rossum v. Chertoff,* No.

H-04-0464, 2005 U.S. Dist. LEXIS 39862, at *13 (S.D. Tex. Dec. 21, 2005) (court lacked

jurisdiction over plaintiff's gender, color, and national origin discrimination claims because the

EEOC charge only alleged discrimination on the basis of race and physical disability, and "the

---

[7] The language of the Right to Sue Letters is identical for both Plaintiffs.

[8] This is not a situation where filing an administrative charge for retaliation is unnecessary because the claim grows
out of a previously filed EEOC charge.  When a plaintiff is retaliated against *for* the filing of an EEOC complaint on
another matter, some courts have held that it is not necessary for the plaintiff to file again to allege retaliation. *Gupta
v. East Tex. State Univ.,* 654 F.2d 411, 414 (5th Cir. 1981); *see Breech,* 2006 U.S. Dist. LEXIS 58344, at *14-15.
However, when the retaliatory conduct occurs prior to the filing of the EEOC complaint, a plaintiff must exhaust his
administrative remedies on that claim. *McCray v. DPC Indus., Inc.,* 942 F. Supp. 288 (E.D. Tex. 1996).  Here, both
Plaintiffs tendered their resignations with Defendant on February 3, 2003, which was the last day on which any
retaliation could have occurred.  The EEOC Charges were not filed and signed by Plaintiffs until May 9, 2003.
(App. 58, 123).

decision rendered by the EEOC likewise only dealt with the issues of racial and disability discrimination").

## C.   Plaintiffs Were Not Discriminatorily Denied Work.

Plaintiffs allege in their Complaint that their workloads were reduced, that they were not given more work when it became available, and that they were denied overtime.  (First Am. Compl. [doc. no. 21] ¶¶ 13-14).  Kirkwood, however, testified that his claim was not about overtime but rather about periodically not getting 40 hours of work per week.  (App. 18, 19, Kirkwood Depo. 46, 48).  Cole, on the other hand, seems to be complaining about both reduction of workload and denial of overtime.  (App. 73-74, 76, Cole Depo. 94-95, 98).

In any event, both Plaintiffs' claims fail under not only Title VII and the TCHRA, but also under 42 U.S.C. § 1981.[9]  Cole testified that all employees' workloads were reduced due to a decrease in business.  (App. 75, Cole Depo. 97).  And both Plaintiffs testified that for the work they claim they were discriminatorily denied, the Company used workers who were paid less than Plaintiffs.  (App. 17, Kirkwood Depo. 44; App. 77, Cole Depo. 99).  Making business decisions based on saving money and cutting costs is not discriminatory.  For instance, in *Phongsavane v. Potter*, No. SA-05-CA-0219-XR, 2006 U.S. Dist. LEXIS 70103 (W.D. Tex. Sep. 18, 2006), the plaintiff claimed that she was denied her usual overtime hours because of her race.  *Id.* at *2.  There, the Postal Service utilized "floater" employees working on regular time to do work that plaintiff would normally have done as overtime.  *Id.* at *27.  The Postal Service "was particularly attuned to its overtime costs because it had not been managed well in the past … and 'assign[ed] overtime only as the 'last alternative.'"  *Id.*  The court found that using floaters to reduce payroll costs by covering for employees who would otherwise be eligible for

---

[9]  Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII.  *See generally Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998).

overtime was legitimate and non-discriminatory. *Id.* at \*27-28; *cf. Norton v. Houston Indus., Inc.*, No. 03-20648, 2004 U.S. App. LEXIS 14695, at \*3-4 (5th Cir. Jul. 16, 2004) (reduction in force designed to reduce costs was a legitimate, non-discriminatory reason for termination).

**D.      Intentional Infliction of Emotional Distress Is Not A Cognizable Claim.**

Plaintiffs have no cognizable claim for intentional infliction of emotional distress ("IIED").  In *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), and *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2004), the Texas Supreme Court held that complaints covered by other statutory or existing common-law remedies cannot be asserted as IIED claims, regardless of whether the plaintiff succeeds on her statutory claims.  *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 448; *Creditwatch, Inc.*, 157 S.W.3d at 816.  The Supreme Court explained that intentional infliction is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no other recognized theory of redress.*" *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447 (citing *Standard Fruit & Vegetable Co. V. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

"Where the gravaman of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447.  Kirkwood and Cole each testified at their depositions that the emotional distress they are alleging was caused solely by the discrimination, harassment, and retaliation that they have alleged in this lawsuit and that there is no other possible cause of their emotional distress.  (App. 78-79, Cole Depo. 138-39; App. 20, Kirkwood Depo. 61).  Accordingly, Plaintiffs' IIED claims must be dismissed.  *See Carlton v. C. Fearneyhough*, No. 4:05-CV-711-Y, 2007 U.S. Dist. LEXIS 20875, at \*13 (N.D. Tex. Mar. 22, 2007) (following *Hoffman-LaRoche*); *Wooten v. Fed. Express Corp.*, No. 3:04-CV-1196-D, 2007 U.S. Dist. LEXIS 2195, at \*80-81 (N.D. Tex. Jan. 9,

2007) (same); *Collier v. Wells Fargo Home Mortg.*, No. 7:04-CV-086-K, 2006 U.S. Dist. LEXIS 35619, at *20-21 (N.D. Tex. May 26, 2006) (same); *Saucedo v. Bank of Tex., N.A.*, No. 3:04-CV-2201-P, 2005 WL 578474, at *3 (N.D. Tex. Mar. 9, 2005) (same); *Tillospm v. Trinity Valley Elec. Cooperative, Inc.*, No. 3:03-CV-2480-D, 2005 WL 292423, at *2 (N.D. Tex. Feb. 2, 2005) (same).

**E.      Plaintiffs Failed to Mitigate Their Damages.**

It is well settled that a plaintiff suing for back and/or front pay has a duty to mitigate his damages, and he must use reasonable diligence to obtain substantially equivalent employment. *E.g., Meadows v. Texas Fed. Credit Union*, No. 5:05CV158, 2007 U.S. Dist. LEXIS 4456, at *94 (E.D. Tex Jan. 22, 2007); *Carpenter v. Tyler Indep. Sch. Dist.*, 429 F. Supp.2d 848, 852 (E.D. Tex. 2006). The burden is on the employer to prove failure to mitigate. *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). To meet this burden, the employer must demonstrate that substantially equivalent work was available to plaintiff and that the plaintiff did not exercise reasonable diligence to obtain it. *Id.* However, if an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially equivalent employment. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003); *Sellers*, 902 F.2d at 1193. A court may find failure to mitigate as a matter of law. *Meadows*, 2007 U.S. Dist. LEXIS 4456, at *96 (citing *Palagi v. Nationwide Mut. Ins. Co.*, 69 F. Supp.2d 903, 907 (S.D. Tex. 1999)). As a matter of law, Plaintiffs' damages should be limited due to their failure to mitigate.

**1.      Cole's Failure To Mitigate.**

Between his resignation with DTR on February 3, 2003, and the start of his job in New Orleans in May 2005, Cole admits that he did not make any effort to find employment.

Q:      Did you start looking for a job immediately after your job with Dallas
Tube and Rollform ended?

A:      Not right off.

Q:      When did you start looking for a job?

A:      I didn't start until that job came up there in New Orleans.

(App.64, Cole Depo. 15)

Cole should therefore be barred from recovering any damages from February 3, 2003, to May 2005, because he failed to make any effort to obtain employment.[10]  *See Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.,* 865 F.2d 1461, 1468 (5th Cir.) (plaintiff "clearly is not entitled to back pay after December 1985 because, by his own admission, he stopped looking for work"), *cert. denied,* 493 U.S. 842 (1989); *Laredo v. Rodriguez,* 791 S.W.2d 567, 572 (Tex. App.—San Antonio 1990, writ denied) (plaintiff not entitled to damages where his interrogatory answers indicated that he made no effort to obtain employment during certain periods of time).

### 2.      Kirkwood's Failure To Mitigate And Inability To Work.

Kirkwood should also be limited in recovering back and front pay, if not barred completely.  Kirkwood had no other employment prior to beginning work for Longhorn Steel in April 2007.  (App. 4, 6, 8, Kirkwood Depo. 8, 10, 12).  During the first five or six weeks that he was receiving unemployment benefits, Kingwood was required to go to the unemployment office to look for a job.  (App. 10, Kirkwood Depo. 14).  During that time, he called only two or three jobs for interviews.  (App. 10, Kirkwood Depo. 14).  Following that, he claims that he "just drove around asking, you know, taking applications," but he can only identify one company that he visited.  (App. 11, Kirkwood Depo. 15).  This is simply not enough evidence to show reasonable diligence.  In a similar case, the Fifth Circuit upheld a finding that an employee was not reasonably diligent in mitigating damages, even though the employee had made *some* effort. *Sellers,* 902 F.2d at 1194.  There, the employee averaged less than one job application per month

---

[10]  Once Cole got the job in New Orleans, he earned $18.75 per hour – significantly more than the $13.25 per hour he had been paid at DTR.  (App. 63, Cole Depo. 14).

for a period of three years, months passed when she did not submit any employment applications, and she exhibited a minimal response to advertisements for substantially equivalent jobs. *Id.* at 1194-96. Kirkwood's extremely minimal effort, like the plaintiff in *Sellers*, did not effectively mitigate his damages.

Temporarily setting aside Kirkwood's failure to mitigate, Kirkwood is not entitled to any damages after April 2005, when he had always planned to retire or, at the latest, September or October, 2005, when he became unable to work and started receiving disability benefits. (App. 5, 7-8, Kirkwood Depo. 9, 11-12). "Back pay is available only to those who are willing and able to return to work." *Alexander v. Frank*, 777 F. Supp. 516, 524 (N.D. Tex. 1991). A backpay award may terminate early "if the plaintiff has voluntarily removed him or herself from the labor force," and courts have "generally excluded periods of unavailability, such as periods of disability, from computation of backpay awards." *Estate of Reynolds v. Dole*, No. C-84-7012-VW (JSB), 1990 U.S. Dist. LEXIS 10259, at *116 (N.D. Cal. Aug. 1, 1990), *aff'd*, 985 F.2d 470 (9th Cir. 1993); *see Phillips v. Union Carbonide*, No. 01-0495, 2003 U.S. Dist. LEXIS 6040, at *7 (E.D. La. Apr. 8, 2003) (plaintiff not entitled to recover lost wages after date of automobile accident when she became totally disabled); *Hicks v. Cheney*, No. 92-2123, 1994 U.S. Dist. LEXIS 20348, at *4 (W.D. Pa. June 29, 1994) ("an employer is not liable for back pay during periods that an alleged improperly discharged employee is unavailable for work due to a disability"); *Rudisell v. S.H.R.M. Catering Serv.*, No. 92-3212, 1994 U.S. Dist. LEXIS 1637, at *7 (E.D. La. Feb. 10, 1994) (assuming that plaintiff would not be entitled to backpay for any period during which she was totally disabled from work); *see also Ostapowicz v. Johnson*, 541 F.2d 394, 401 (3d Cir. 1976) (backpay could be deducted for periods when plaintiff was unemployable because of illness), *cert. denied*, 429 U.S. 1041 (1977); *Sellers v. Garnsey & Wheeler Co.*, No. 79-C-1193, 1980 U.S. Dist. LEXIS 16768, at *23 (D. Colo. Nov. 26, 1980) (it

was reasonable to exclude from the backpay period a two-week period during which plaintiff was in a body cast).  Accordingly, Kirkwood's back and front pay should be limited, if not completely barred, as a matter of law.

### III.
### CONCLUSION

Many of Plaintiffs claims are barred or should be dismissed.  Plaintiffs' should also be barred from the recovery of damages for all time periods in which they failed to mitigate their alleged losses.  Defendants respectfully request that this Court grant its Motion for Partial Summary Judgment and dismiss with prejudice all claims against Roger Shepherd, both Plaintiffs' claims for retaliation, Kirkwood's age discrimination claims, both Plaintiffs' claims for discriminatory reduction of workload and denial of regular and overtime work, both Plaintiffs' claims for intentional infliction of emotional distress, and both Plaintiffs' claims for back and front pay.  Additionally, Defendants request that this Court award Defendant its costs in defending this action, and grant Defendant all other relief to which it may be justly entitled.

DATED: AUGUST 1, 2007.                    Respectfully submitted,


                              FULBRIGHT & JAWORSKI L.L.P.



                              _____
                              William P. Finegan
                              State Bar No.  07008700
                              Helen Thigpen
                              State Bar No.  00797756
                              2200 Ross Avenue, Suite 2800
                              Dallas, Texas  75201-2784
                              Telephone:  (214) 855-8000
                              Facsimile:  (214) 855-8200

                              ATTORNEYS FOR DEFENDANT INCA
                              METAL PRODUCTS CORPORATION

31366847.1                          14

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2007, I electronically filed foregoing document with the clerk of the Court using the ECF system, which will send notification of such filing to the following:

> Grover G. Hankins
> The Hankins Law Firm, P.L.L.C.
> The Lyric Centre
> 440 Louisiana Street, Suite 725
> Houston, TX 77002