IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HENRY KIRKWOOD, et al.,           §
                                  §
                Plaintiffs,       §
                                  §   Civil Action No. 3:04-CV-0226-D
VS.                               §
                                  §
INCA METAL PRODUCTS               §
CORPORATION, et al.,              §
                                  §
                Defendants.       §

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for discrimination and
retaliation and a pendent state-law claim for intentional
infliction of emotional distress, plaintiffs Henry Kirkwood
("Kirkwood") and Jessie Cole ("Cole") move the court to reconsider
its decision denying their motion for enlargement for discovery,
and they also move to extend and to compel discovery, or,
alternatively, to strike defendants' motion for partial summary
judgment. Defendants Inca Metals Products Corporation, its
division Dallas Tube and Rollform ("Inca Metals"),[1] and Roger
Shepherd ("Shepherd") move for partial summary judgment. For the
reasons that follow, the court denies plaintiffs' motions and
grants in part and denies in part defendants' motion.

---

[1]Inca Metals points out that the proper corporate name of the
entity that employed plaintiffs is "KIC Holdings, Inc. d/b/a
Kingway Inca Clymer Material Handling." Ds. Br. 1 n.1. As have
defendants, the court will assume in deciding this motion that
defendant Inca Metals has been properly named.

Kirkwood and Cole bring claims for race discrimination and retaliation, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"),[2] and under Texas law for intentional infliction of emotional distress. Kirkwood also alleges a claim for age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. The claims against Shepherd are limited to those based on § 1981 and for intentional infliction of emotional distress.[3]

Kirkwood and Cole filed the lawsuit on February 4, 2004. By a July 6, 2006 scheduling order, the court set July 1, 2007 as the deadline for the parties to complete discovery. Under Fed. R. Civ.

---

[2]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division.'" *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet. h.) (not designated for publication)). As in *King*, the court for clarity will refer to this claim as brought under the TCHRA.

[3]The court denies as moot the first ground of defendant's summary judgment motion, in which they contend that Title VII, TCHRA, and ADEA claims cannot be brought against Shepherd. Plaintiffs do not assert claims against Shepherd under these statutes. The first amended complaint only asserts § 1981 and intentional infliction of emotional distress claims against Shepherd.

- 2 -

P. 6(a), to which the order explicitly referred, the deadline was extended to July 2, 2007, because July 1 was a Sunday. On July 2 plaintiffs filed a motion to enlarge time, requesting a 60-day extension of the discovery period. In *Kirkwood v. Inca Metal Products Corp.*, 2007 WL 2325222 (N.D. Tex. Aug. 13, 2007) (Fitzwater, J.) ("*Kirkwood I*"), the court concluded that plaintiffs had failed to demonstrate good cause under Rule 16(b) for modifying the July 6, 2006 scheduling order, and it denied plaintiffs' motion to enlarge time. *Id.* at *3.

Defendants move for partial summary judgment.[4] Plaintiffs move the court to reconsider its decision in *Kirkwood I*, and they also move to extend and to compel discovery or, alternatively, to strike defendants' motion for partial summary judgment.

II

The court turns initially to plaintiffs' motion for reconsideration.

A

Plaintiffs maintain that they were unable to complete discovery by the court-ordered deadline because defendants did not allow them to depose certain witnesses. They contend that they entered into an agreement with defendants to extend the time for both sides to conduct depositions, and that under this agreement,

---

[4]The motion is one for partial summary judgment because defendants do not seek summary judgment on plaintiffs' racially hostile work environment claims.

defendants conducted depositions on July 12, 2007, ten days after the discovery deadline. Plaintiffs' counsel avers that during the prior months, he repeatedly and in good faith attempted to "reach an accommodation with Defendants regarding depositions" through "a course of correspondence, emails and telephonic conferences." Ps. Mot. 6. Plaintiffs contend that although they allowed defendants to conduct depositions after the deadline, defendants refused to honor the agreement and denied plaintiffs' deposition requests. Plaintiffs maintain that on July 17, 2007 they attempted to serve notices of deposition on Jim Hutchins ("Hutchins") and Shepherd, but they "became evasive and refused to accept service." *Id.* at 5. Plaintiffs argue that this evasion of service should be treated as a Rule 37(a)(3) violation, and that the court should therefore require defendants to comply with plaintiffs' deposition requests.

Defendants deny having entered into an agreement with plaintiffs to take depositions after the discovery deadline. They maintain that the depositions that they took after the deadline were requested well in advance, but that plaintiffs did not request to take their depositions until July 2, 2007. Defendants deny that efforts were made to evade service of deposition notices, and they contend that plaintiffs' sole attempt to conduct discovery during the allotted time period was through a telephone call, made on the last day of discovery, in which their counsel requested the depositions.

Plaintiffs essentially seek through their various motions to modify the scheduling order entered July 1, 2006. As such, the court analyzes the request under the Rule 16(b)(4)[5] "good cause" standard, which the court explained in *Kirkwood I* and need not repeat here.

The court began its analysis in *Kirkwood I* by noting that plaintiffs had not stated specifically why they were unable to complete discovery within the allotted time; plaintiffs' counsel had simply asserted he had experienced difficulties getting his clients to respond to requests to assist in discovery. Now plaintiffs advance a different explanation, alleging that their failure to conduct discovery during the allotted time was due to defendants' not honoring an agreement to allow depositions after the discovery deadline.

Plaintiffs' new allegations are insufficient to warrant reconsidering the court's previous analysis in *Kirkwood I* of their motion for extension. First, the allegations are wholly unsupported. Plaintiffs offer no evidence of the alleged agreement or of any of their alleged attempts to conduct discovery during the allotted period. They assert that the "parties began to discuss

---

[5]Under the restyled Federal Rules of Civil Procedure that took effect December 1, 2007, the good cause standard is now found in Rule 16(b)(4), which states that "[a] schedule may be modified only for good cause and with the judge's consent."

[deposition issues] several months ago and engaged in a course of correspondence, emails, and telephonic conferences," Ps. Mot. 6, but they provide no proof of these communications. Second, defendants properly call into question the credibility of plaintiffs' account by noting that plaintiffs did not refer to the alleged agreement in their earlier motion for enlargement, where they relied instead on alleged difficulties with their clients.

Assuming *arguendo* that there was such an agreement, plaintiffs fail to explain why they waited until the last day of the discovery deadline to request the depositions. Despite their allegations of communicating with defendants about deposition issues, plaintiffs do not contest the court's finding in *Kirkwood I* that plaintiffs did not actually request the depositions until the final day of discovery. *See Kirkwood I*, 2007 WL 2325222, at *2. Defendants, on the other hand, have adduced evidence that they initiated deposition requests as early as September 2006, seeking to schedule them on May 8, 2007, and serving notices of intent to take depositions on May 29, 2007. *See* Ds. App. 1-6. If these communications occurred as a part of the alleged agreement, plaintiffs should have adduced similar evidence of their attempts to request depositions well before the discovery deadline. Plaintiffs have not filed a reply brief contesting any of defendants' assertions or providing support for their account of the agreement. As noted in *Kirkwood I*, plaintiffs instead "have

shown a pattern of disregarding court-ordered deadlines. This tends to establish that plaintiffs' failure to meet a discovery deadline that allowed them almost one full year for discovery is not the result of circumstances beyond the control of their diligent efforts, but is instead due to their own neglect." *Kirkwood I*, 2007 WL 2325222, at *3.

Accordingly, the court holds that plaintiffs have failed to establish the good cause required to warrant modifying the scheduling order in this case. *See, e.g., Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).[6]

C

The court also denies plaintiffs' alternative motion to strike defendants' motion for summary judgment.

Plaintiffs advance as the basis for this motion defendants' alleged misconduct in not honoring the alleged agreement to allow depositions to be taken after the discovery deadline. For the reasons already explained, the court rejects this argument on the ground that it is not sufficiently supported and therefore cannot

---

[6]In addition to the motions to extend and compel discovery, plaintiffs move pursuant to Rule 56(f) to stay further proceedings on defendants' motion for summary judgment pending a ruling on their motions to compel discovery and to reconsider. The court denies the motion as moot because the court is deciding the motion before deciding defendants' motion for partial summary judgment.

serve as a basis to impose sanctions on defendants.

The court also finds that defendants have adequately explained why they took the depositions outside the discovery period. They have adduced evidence of diligence during the discovery period by attempting to schedule the depositions as early as October 2006. Ds. App. 1. Defendants contend that plaintiffs did not respond to their request and were thus unable to schedule the depositions until much later. Plaintiffs do not refute this contention or otherwise argue that defendants were not diligent in conducting discovery during the allotted period.

The court concludes that plaintiffs' unsupported allegations of an agreement to conduct depositions after the discovery deadline are insufficient to establish good cause under Rule 16(b), or to serve as a basis for striking defendants' motion for summary judgment. Accordingly, the court denies plaintiffs' motion to strike defendants' motion for partial summary judgment.

III

The court now turns to defendants' motion for partial summary judgment.

A

Kirkwood and Cole, both African-American, were employees of the Inca Metals' Dallas Tube and Rollform division until February

3, 2003.[7]  Kirkwood began employment with Inca Metals on May 16, 1975 as a catcher, and later progressed to a master operator position.  Cole was hired in 1985 and worked as an operator until his employment concluded.  Plaintiffs allege that they were subject to racial harassment by Shepherd, the Plant Supervisor.  The harassment consisted of cursing, yelling, making discriminatory remarks, and excessive monitoring.  Specifically, plaintiffs contend that during the last few months of their employment, Shepherd maintained excessive watch over their work area, failed to maintain the machines plaintiffs used, and made derogatory and racist remarks when Kirkwood took the initiative to repair the machines himself.  When they complained of these incidents to Hutchins, the Plant Manager, he did not provide a satisfactory response.  Plaintiffs also allege that Inca Metals discriminatorily reduced their work hours.  When additional work became available, it was given to non-African-American temporary workers, whom plaintiffs believed to be undocumented aliens.  This occurred on several occasions, despite plaintiffs' eager requests for more work hours.

---

[7]Because plaintiffs did not respond to defendants' motion for summary judgment, the court draws its recitation of the facts from plaintiffs' complaint and defendants' "Statement of Undisputed Facts" contained in their summary judgment brief.  The court recounts the evidence favorably to plaintiffs as the summary judgment nonmovants, and draws all reasonable inferences in their favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

Plaintiffs resigned their employment in February 2003, after complaining to Hutchins about working conditions and Shepherd's conduct and attitude. They filed charges of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that they were subjected to racial harassment from June 2002 until they resigned in 2003. In their first amended complaint ("complaint"), in addition to the allegations contained in their EEOC charges, plaintiffs aver that the reduction of their regular workload was discriminatory, that they were subjected to retaliation, and that Shepherd discriminated against Kirkwood on the basis of his age.

B

Defendants filed their summary judgment motion on August 1, 2007. Plaintiffs' response was due 20 days thereafter. See N.D. Tex. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 20 days from the date the motion is filed."). Plaintiffs have not responded.

Plaintiffs' failure to respond to defendants' motion does not permit the court to enter a "default" summary judgment, but the court may accept as true all of defendants' undisputed facts. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Moreover, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment

evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Accordingly, although in this memorandum opinion the court has recounted certain allegations in plaintiffs' complaint to facilitate an understanding of the conduct of which they complain, it has not considered the factual allegations to be competent summary judgment evidence.[8]

IV

The court considers first whether plaintiffs exhausted the administrative remedies for their retaliation claims and Kirkwood's age discrimination claim. Defendants contend that these claims are barred because plaintiffs did not exhaust them in their EEOC charges. The court agrees and grants summary judgment dismissing plaintiffs' retaliation claims and Kirkwood's age discrimination claim.

A

Filing a charge with the EEOC is a condition precedent to filing a Title VII suit. *See Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990). This is also true of a suit under the ADEA. *See Gustafson, Inc. v. Bunch*, 1999 WL 304560, at *6 (N.D. Tex. May 7, 1999) (Fitzwater, J.) (citing 29 U.S.C. § 626(d);

---

[8]Plaintiffs have presented various motions to extend discovery and summary judgment response deadlines. The court denied these motions in *Kirkwood I*, 2007 WL 2325222, at *1, and it adheres to these decisions today.

*Young*, 906 F.2d at 179), *aff'd,* No. 99-11289, 244 F.3d 134 (5th Cir. Dec. 8, 2000) (per curiam) (unpublished table decision). Additionally, "[t]he [THCRA] requires the exhaustion of state remedies as a jurisdictional prerequisite." *Jones v. Grinnell Corp.*, 235 F.3d 972, 974 (5th Cir. 2001) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991)). "If a complainant fails to exhaust his state administrative remedies, the Texas Human Rights Act jurisdictionally bars this court from hearing the case regardless of equitable and policy concerns." *Id.* (citing *Zevator v. Methodist Hosp. of Houston*, 1995 WL 500637, at *2 (S.D. Tex. Mar. 30, 1995); *Ridgway's Inc. v. Payne*, 853 S.W.2d 659, 663 (Tex. App. 1993, no writ)).[9]

"The lawsuit that follows is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination. In other words, the complaint may encompass any kind of discrimination 'like or related to' allegations contained in the EEOC charge." *Hayes v. MBNA Tech., Inc.*, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (Fitzwater, J.) (citations omitted).

---

[9]A § 1981 claim need not be exhausted. *See, e.g., Alpha Portland Cement Co. v. Reese*, 507 F.2d 607, 608-10 (5th Cir. 1975); *King*, 2007 WL 2005541, at *10. In plaintiffs' complaint, however, their § 1981 claim is limited to a discrimination claim. Am. Compl. § VI(A). Their retaliatory discharge claims are based on Title VII and the TCHRA. *Id.* at §§ VI(D) and VII(B). Therefore, there is no 1981-based retaliation claim that survives summary judgment.

Each plaintiff only checked the box marked "race" on his charge of discrimination. Neither the "age" nor "retaliation" box was checked. Moreover, each described the harm he suffered as follows:

> From on or around June 26, 2002 and continuing until I was forced to quit my position I was subjected to a racially hostile work environment. I was harassed by being yelled at, cursed at by the Plant Supervisor. I was monitored on a constant basis by being watched. I was given less overtime hours than non-Black employees.[10]

Ds. App. 58, 123.

The court recognizes that plaintiffs' failure to check a particular box is not of itself dispositive. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) ("To be clear, we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." (footnote omitted)). But there is no indication in plaintiffs' EEOC charges, in the corresponding charge questionnaires, or any other materials presented to the EEOC that show that plaintiffs exhausted their retaliation claims[11] or that

_____

[10]Except for an insignificant typographical error, Cole's charges read exactly as do Kirkwood's.

[11]As do defendants, *see* Ds. Br. 8 n.8, the court recognizes that a retaliation claim need not be exhausted where the person complains of retaliation for filing the EEOC charge itself. But because plaintiffs complain of retaliatory acts that preceded the filing of their EEOC charges, they do not fall within this

Kirkwood exhausted his age discrimination claim. *See, e.g., Hayes*, 2004 WL 1283965, at *8 (holding that plaintiff did not exhaust retaliation claim where she did not check retaliation box on EEOC charge and did not mention word retaliation or explicitly assert retaliatory-type conduct in attachment to EEOC questionnaire); *Perez v. MCI World Com Commc'ns*, 154 F.Supp.2d 932, 938 (N.D. Tex. 2001) (Buchmeyer, J.) ("Plaintiff did not check the 'retaliation' box on the Charge, nor did she include any statements [in her charge or questionnaire] regarding retaliation. Therefore, Plaintiff failed to exhaust her administrative remedies for the claim of retaliation . . . .").

Accordingly, because plaintiffs did not indicate that they were complaining of retaliation in their EEOC charges, and because Kirkwood did not complain of age discrimination in his, and because these claims are not sufficiently "like or related to the allegations in the EEOC charge," the court holds that plaintiffs failed to exhaust their administrative remedies on the retaliation claims and Kirkwood's age discrimination claim, and it dismisses these claims.

---

exception. *See Hayes*, 2004 WL 1283965, at *9. "Where the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies on that claim." *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 295 (E.D. Tex. 1996).

V

Defendants also move for summary judgment on plaintiffs' claim of discriminatory denial of work.

A

In their complaint, plaintiffs allege that they were denied work hours and overtime. Defendants move for summary judgment dismissing these claims to the extent they are based on Title VII, the TCHRA, and § 1981. They maintain that plaintiffs' workloads were reduced due to a decrease in business, and that, when work became available, Inca Metals used less-expensive temporary workers. Defendants point to plaintiffs' testimony in response to questions about the decreases in business and substitute labor. They aver that they have offered a legitimate, nondiscriminatory reason for the reduction of workload and denial of overtime.

B

In a case such as this one, where plaintiffs lack direct evidence of discrimination, they can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As modified, *McDonnell Douglas* consists of three stages. Plaintiffs must first establish a prima facie case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [them]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to articulate a legitimate,

nondiscriminatory reason for the adverse employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). The defendant's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (Fitzwater, J.) (age discrimination case). The *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.,* 509 U.S. at 507 (emphasis omitted) (quoting *Burdine*, 450 U.S. at 254-55 & n.8). A defendant fails to meet the production burden when it does not "introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id*. at 509 (emphasis in original).

After the employer articulates its legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the reason produced was a pretext for discrimination. The plaintiff can

satisfy this burden by showing "that the legitimate reasons offered by [the employer] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). That is, he must produce sufficient evidence for a reasonable trier of fact to find either that the employer's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated the adverse employment action. *See Burdine*, 450 U.S. at 256.

C

In their motion, defendants do not address whether plaintiffs have satisfied their prima facie burden. Defendants simply posit that they have set forth a legitimate, nondiscriminatory reason for plaintiffs' reduced workload. Because defendants must satisfy the burden of offering a nondiscriminatory reason for the adverse action only *after* plaintiffs have satisfied their prima facie burden, the court will assume that, for purposes of their motion, defendants do not contest that plaintiffs have satisfied this burden. The court will therefore confine its analysis to the second *McDonnell Douglas* step.

Defendants must satisfy their burden of production by adducing evidence of their proffered legitimate, nondiscriminatory reason for the reduced workload, namely that a decrease in business reduced all employees' workloads, and that they used less expensive

labor in plaintiffs' stead as a "business decision based on saving money and cutting costs." Ds. Br. 9. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *See St. Mary's Honor Ctr.*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254-255, and n. 8) (emphasis omitted). The requirement of adducing evidence is important in determining whether defendants have clearly set forth a legitimate, nondiscriminatory reason. "The burden of production requires more than an assertion, it requires evidence." *Sabrah v. Lucent Techs., Inc.*, 1998 WL 792503, at *4 (N.D. Tex. Nov. 6, 1998) (Fitzwater, J.).

Defendants take a somewhat unusual approach in this case in attempting to meet their burden of production.[12] Rather than introduce evidence from one of their own employees who has personal knowledge about Inca Metals' work-hour and overtime policies, they rely on portions of plaintiffs' deposition testimony. In testimony that is not completely coherent, plaintiffs appear to agree that everyone's workload was reduced and that the substitute labor was

_____

[12]The court has seen cases in which defendants rely on plaintiff's evidence and on their own evidence to satisfy their burden of production. It is unusual, however, for a defendant to rely exclusively on evidence derived from the plaintiffs, since employers can easily develop evidence from their own sources that demonstrates they had a legitimate, nondiscriminatory reason for taking the adverse employment action in question.

cheaper. Defendants' evidence in support of the proffered legitimate, nondiscriminatory reason for the reduced workloads is contained on pages of Kirkwood's and Cole's depositions that contain the following pertinent exchanges:

> Q. Was it everyone's workload reduced due to a decrease in business?
>
> A. What was that?
>
> [Objection]
>
> Q. Wasn't everyone's workload reduced due to a decrease in business?
>
> A. Yes, and some things.

Ds. App. 75 (Cole deposition).

> Q. So the temps were a lot cheaper than you?
>
> A. Yeah. But such, like I said, they could have let us make 40 hours. Everybody else was getting overtime, but we was held back to 36 hours . . . .

*Id.* at 17 (Kirkwood deposition).

> Q. So the other guys that he brought over to work on your line said they were cheaper?
>
> [Objection]
>
> Q. He said that they were cheaper?
>
> A. I mean, something. He said we need to go home. They are making less money than we was making. But we'd know what to do on the line . . . .

*Id.* at 77 (Cole deposition).

The court notes initially that plaintiffs' answers are not clearly responsive to the questions asked. Where they appear to

affirm the assertions of the questioner, their answers are immediately followed by statements seemingly unrelated to the question, suggesting lack of comprehension.[13] Nor is it clear from the context of the questions and responses whether plaintiffs are attesting to information based on their personal knowledge, or are simply recounting what they have heard from others.

More important, the evidence at most suggests *some perception* by plaintiffs——assuming defendants' interpretation of the testimony is sufficiently clear——that there was a reduction in business and that defendants used cheaper substitute labor. Plaintiffs' unclearly articulated perception of Inca Metals' business conduct, however, does not satisfy defendants' obligation to introduce evidence that is adequate to "clearly set forth" a legitimate, nondiscriminatory reason for the workload reduction. Defendants are in the best position to proffer evidence of their business practices, without having to rely on plaintiffs' cursory statements. *Cf., e.g.*, *Evans v. City of Houston*, 246 F.3d 344, 351 n.5 (5th Cir. 2001) (holding that defendant satisfied burden of production by producing evidence consisting of various and detailed internal memoranda and letters, as well as deposition testimony of supervisor and coworkers).

---

[13]There is also a suggestion of combativeness in the Cole deposition. *See* Ps. App. 76-77.

Moreover, although the court does not assess the credibility of defendants' proffered explanation, defendants are nevertheless obligated to adduce "evidence which, *taken as true*, would *permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr.,* 509 U.S. at 509. The evidence that defendants have produced, which consists of plaintiffs' meager and somewhat unclear statements pertaining to Inca Metals' business practices, is insufficient, even when taken as true. The evidence does not permit the conclusion that Inca Metals was undergoing a decrease in business that necessitated a company-wide reduction in employee workloads, or that Inca Metals substituted less-expensive workers in plaintiffs' stead, any more than would plaintiffs' stated perceptions that the substitute labor force was composed of illegal aliens permit the conclusion that the company in fact employed undocumented workers.

Because defendants have not met their burden of production, the court denies defendants' motion to the extent they seek summary judgment dismissing plaintiffs' claims based on discriminatory denial of work.

VI

The court now considers plaintiffs' claims for intentional infliction of emotional distress.

Defendants move for summary judgment dismissing these claims on the grounds that plaintiffs have not brought an action for intentional infliction of emotional distress that is independent of their statutory discrimination claims. The court agrees.

In *Hoffmann-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), the Texas Supreme Court reiterated that intentional infliction of emotional distress was originally recognized to be a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id*. at 447. In *Hoffmann-LaRoche* the court addressed the claims of a plaintiff who sued her former employer for sexual harassment and intentional infliction of emotional distress. *Id*. at 441-42. It held that because the gravamen of her complaint was sexual harassment, she was unable to pursue both claims unless she proved acts independent of her sexual harassment claim that supported a claim for intentional infliction of emotional distress. *See id.* at 441.

The gravamen of plaintiffs' claims for intentional infliction of emotional distress is their claims for discrimination, harassment, and retaliation. Plaintiffs explicitly acknowledge that they do not rely on acts independent of these claims to hold

defendants liable for intentional infliction of emotional distress. *See* Ds. App. 20, 78-79. Because plaintiffs do not assert an intentional infliction of emotional distress cause of action that is based on acts independent of those underlying their statutory claims, the court dismisses the intentional infliction of emotional distress claims.

## VII

The court addresses next defendants' contention that plaintiffs' claims for back and front pay should be barred——partly, if not completely——because plaintiffs failed to mitigate their damages.

### A

Defendants maintain that Cole admitted not making any effort to look for work between his resignation with Inca Metals on February 3, 2003 and the start of his job in New Orleans in May 2005. Defendants also contend that Kirkwood's efforts to find employment are insufficient as a matter of law, and that any computation of back pay must exclude the period during which Kirkwood received disability benefits.

### B

Title VII requires plaintiffs to mitigate damages by being reasonably diligent in seeking employment substantially equivalent to the position lost. *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231-32 (1982). The reasonableness of a Title VII claimant's diligence

"should be evaluated in light of the individual characteristics of the claimant and the job market." *Sellers v. Delgado Coll.,* 902 F.2d 1189, 1193 (5th Cir. 1990) (citing *Rasimas v. Mich. Dep't of Mental Health,* 714 F.2d 614, 624 (6th Cir. 1983)). "'Substantially equivalent employment' is that 'employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated.'" *Id.* (citing *Sellers v. Delgado Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1998)).

Although it is plaintiffs' duty to mitigate, the employer has the burden of proving failure to mitigate. *Sellers,* 839 F.2d at 1139. To meet this burden, an employer may demonstrate that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it. *Id.* If an employer proves that an employee has not made reasonable efforts to obtain work, however, the employer does not also have to establish the availability of substantially equivalent employment. *Id.*

Because defendants will bear the burden of proving this affirmative defense at trial, they "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v.*

*Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). The court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.) ("Accordingly, even if the court were to accept St. Paul's argument, it would be insufficient under the heavy beyond peradventure standard to obtain summary judgment on an affirmative defense as to which it will have the burden of proof at trial." (internal quotation marks and citation omitted)).

C

The court first reviews the summary judgment evidence as to Cole's efforts to mitigate. As defendants point out, Cole explicitly admitted not starting to look for work after his resignation with Inca Metals until "the job came up there in New Orleans." Ds. App. 64. Because Cole did not make *any* effort to find employment, the court holds that he is not entitled to recover back pay for the period of time between his resignation from Inca Metals and when he found employment in New Orleans. *See Hansard v. Pepsi-Cola Metro. Bottling Co.,* 865 F.2d 1461, 1468 (5th Cir. 1989) (holding that plaintiff was not entitled to back pay for period during which plaintiff admitted he stopped looking for work).

Kirkwood, on the other hand, testified that, after leaving Inca Metals, he visited an "employment office," called for job interviews, and drove around asking and taking applications. Ds.

App. 10-11.  Although he remembers only one specific company where he sought work, Kirkwood alleges that he went to several places, but was still unable to obtain employment.  *Id.*  Defendants rely on *Sellers* for the proposition that minimal efforts are insufficient to satisfy the reasonable diligence requirement, and that under this standard Kirkwood has failed to demonstrate reasonable diligence.  In *Sellers* the Fifth Circuit upheld a magistrate's finding that the plaintiff's minimal job search——averaging less than one job application per month over a three-year period——failed to satisfy the reasonable diligence requirement.  But the *Sellers* court evaluated the plaintiff's job-search efforts under the *Rasimas* requirement to evaluate reasonableness "in light of the individual characteristics of the claimant and the job market." *Sellers*, 902 F.2d at 1193.  The court thus focused on certain factors that heightened the diligence requirement for the plaintiff in that case, noting that "it was especially important that the relatively inexperienced [claimant] actively seek employment during [the period immediately following her discharge] . . . because the longer she separated herself from her newly acquired professional skills, the more difficulty she would have persuading prospective employers to accept her as a qualified professional."  *Id*. at 1194. Considerations of this kind direct the analysis in the opposite direction in the present case, given that Kirkwood is admittedly an older worker.  Kirkwood in fact ascribes some of his difficulties

in finding a job to his age. Ds. App. 10. Based on the summary judgment evidence, the court cannot conclude that defendants have met the heavy standard of establishing beyond peradventure that Kirkwood was not reasonably diligent in seeking employment substantially equivalent to the position lost. Accordingly, the court declines to grant summary judgment on this basis precluding Kirkwood from recovering back pay.

Similarly, the court declines to grant summary judgment dismissing back pay awards during the period that Kirkwood was receiving disability benefits.[14] Although defendants cite multiple cases from other circuits for the proposition that computation of back pay awards should exclude periods of disability, the rule in this circuit is that district courts have discretion in deciding whether to deduct periods of disability from back pay awards. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1581 (5th Cir. 1989) (concluding that district court "may exercise its discretion in deciding whether to deduct social security disability benefits from back pay awards"); *see also Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988) (holding that

_____

[14]In this portion of their argument, defendants also posit that Kirkwood is not entitled to any damages after April 2005, because he announced at that time an intention to retire. Defendants cite no relevant authority for this proposition, nor do they address the fact that Kirkwood has not in fact fully retired from employment. Accordingly, although this evidence may impact the determination whether to award back pay in a particular amount, the court declines to grant summary judgment limiting a back pay award on this basis.

"the district court has discretion to decide whether unemployment compensation should be deducted from a back pay or front pay award."). The court therefore holds that defendants are not entitled to summary judgment dismissing Kirkwood's claim for back pay during the time in which he received disability benefits.

*    *    *

Accordingly, defendants' August 1, 2007 motion for partial summary judgment is granted in part and denied in part. Plaintiffs' August 16, 2007 motion to reconsider plaintiffs' motion for enlargement, and their August 16, 2007 motion to extend and to compel discovery or, alternatively, motion to strike defendants' motion for summary judgment are denied.

**SO ORDERED.**

January 30, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE